878 F.2d 1436
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MINORITY EMPLOYEES OF the TENNESSEE DEPARTMENT OF EMPLOYMENT
SECURITY, INC., Plaintiff-Appellant,
v.
STATE OF TENNESSEE, DEPARTMENT OF EMPLOYMENT SECURITY, et
al., Defendants-Appellees.
 No. 88-5429.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1989.
 
 1
 Before ENGEL, Chief Judge, BOGGS, Circuit Judge, and BENJAMIN F. GIBSON, District Judge.*
 
 
 2
 BENJAMIN F. GIBSON, District Judge.
 
 
 3
 Plaintiff Minority Employees of the Tennessee Department of Employment Security, Inc. (METDESI) appeals the District Court's dismissal of this action for failure to establish a prima facie case of racial discrimination. For the reasons stated below, the Court affirms the decision of the District Court.
 
 
 4
 * Corporate plaintiff METDESI and individual plaintiffs Hazel Perry, Rosetta Davis, and Alma Oliver filed this action on March 6, 1981 against defendants Tennessee Department of Employment Security (TDES) and the Department of Personnel; Robert J. Bible, Commissioner of TDES; and William C. Koch, Jr., Commissioner of the Department of Personnel, for violations of Sections 1981, 1983, 1985, and Title VII.
 
 
 5
 Plaintiffs alleged both disparate treatment and disparate impact racial discrimination. In addition to claiming that individual plaintiffs were intentionally discriminated against, plaintiff alleged a pattern and practice of discrimination regarding promotions and conditions of employment. Plaintiffs alleged that the use of registers by TDES for appointments and promotions was discriminatory.
 
 
 6
 The complaint originally included class action allegations but class certification was denied because the matter was not pursued by plaintiffs in a timely fashion.
 
 
 7
 The District Court severed the action, referring the Title VII claims to the magistrate on March 31, 1982. The magistrate conducted trial from September 12-16, 1985 on both the disparate treatment and disparate impact claims. On January 31, 1986 the magistrate issued his report, recommending that plaintiff Davis recover damages, that a permanent injunction issue against defendant TDES with regard to the placement of plaintiff Davis and with regard to the department's implementation of civil service procedures, and that the remainder of plaintiffs' claims be dismissed.
 
 
 8
 After receiving and reviewing objections to the magistrate's recommendations, the District Court issued a Memorandum and Order on September 3, 1986 rejecting the magistrate's finding of discrimination. The District Court dismissed all Title VII claims.
 
 
 9
 Defendants then filed a joint motion for summary judgment as to the Section 1981, 1983, and 1985 claims. The District Court again referred the motion to the magistrate. On January 20, 1988 the magistrate issued his report, recommending that the District Court grant defendants' motion and dismiss the action on the ground that the Section 1981 and 1983 claims were barred by principles of res judicata. In addition, the magistrate held that plaintiffs failed to plead their conspiracy allegations under Section 1985 with the required specificity. The District Court again reviewed objections, adopted the magistrate's recommendations, granted summary judgment, and dismissed the action.
 
 
 10
 On appeal plaintiffs raise three issues: (1) whether the court erred in refusing to extend the time in which to apply for class certification; (2) whether the court erred in dismissing plaintiffs' Title VII claims; and (3) whether the court erred in granting defendants' motion for summary judgment.
 
 
 11
 This Court dismissed the appeals of the individual plaintiffs on October 7, 1988 under Torres v. Oakland Scavenger Co., 108 S.Ct. 2405 (1988), which requires the plaintiffs to identify by name the specific parties appealing. Thus, the only remaining claim is METDESI's request for injunctive and declaratory relief arising out of the use of the Department of Personnel's appointment and promotional registers which METDESI claims has a disparate impact on the promotional opportunities of black employees within TDES.
 
 II
 
 12
 After conducting a hearing on the Title VII claims, the magistrate concluded that the statistical evidence demonstrated that the promotion process had a disparate impact on the promotional opportunities of black employees. In addition, the magistrate held that the testimony of black employees, offered to show a continual pattern of discrimination, evinced "a practice of manipulation of registers, disregard for civil service guidelines, and occasional cronyism." Finally, the magistrate concluded that plaintiffs had demonstrated that a proper application of the civil service guidelines would not result in the discriminatory effects shown. The magistrate thus recommended that plaintiffs were entitled to injunctive relief.
 
 
 13
 The District Court disagreed, however, determining that the statistical and testimonial evidence relied upon by the magistrate failed to establish a prima facie case of disparate impact. The District Court accepted the magistrate's factual findings, but nonetheless found "a serious flaw in the statistical evidence proffered by the plaintiffs." The District Court stated that in order to establish a prima facie case of disparate impact:
 
 
 14
 'the plaintiff must show that the proffered statistics constitute a meaningful comparison.' While an 'exact correspondence between the geographical, educational, and occupational characteristics of the plaintiff's proffered pool and the defendant's valid employment requirements' need not be shown, the statistical evidence must be 'sufficiently meaningful to support the inference that discrimination has occurred.' In order to be sufficiently meaningful, 'statistical comparisons ... must be between comparable groups and free from variables which would undermine the reasonableness of discrimination inferences to be drawn.'
 
 
 15
 Minority Employees of the Tennessee Department of Employment Security, Inc. v. State of Tennessee, Department of Employment Security, No. 81-3114, slip op. at 10 (M.D.Tenn. Sept. 3, 1986) (citations omitted).
 
 
 16
 The District Court found that plaintiffs' statistical evidence failed to accurately reflect those employees interested in and qualified for promotion. Furthermore, plaintiffs' statistical evidence failed to indicate the racial composition of the pool of employees seeking placement on the promotional register and failed to restrict itself to actual applicants who were qualified for promotion. Finally, the District Court noted that testimony given of individual instances in which a manipulation of the promotional system allegedly occurred was insufficient in and of itself to establish a case of disparate impact in violation of Title VII without valid underlying statistical evidence.
 
 III
 
 17
 This Court must determine whether the District Court's conclusion that plaintiff did not provide sufficient evidence to meet its initial burden of establishing that defendants' employment practices have a disparate impact was clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 18
 Disparate impact liability prohibits facially neutral employment practices which fall more harshly on classes of persons protected by Title VII and which are not justified by business necessity. Griggs v. Duke Power Co., 401 U.S. 424, 429-31 (1971); International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15 (1977); Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc., 690 F.2d 88, 93-94 (6th Cir.1982). Subjective employment practices may be analyzed under the disparate impact theory. Watson v. Fort Worth Bank & Trust, 108 S.Ct. 2777, 2787 (1988).
 
 
 19
 In order to establish a prima facie case of disparate impact discrimination plaintiff first must identify the specific employment practice challenged. Id. at 2788. Then, plaintiff must offer statistical evidence sufficient to show that the challenged practice has caused the exclusion of applicants for promotion because they are within a protected group. Id. at 2788-89. "[S]tatistical disparities must be sufficiently substantial [to raise] an inference of causation." Id. at 2789. The statistical evidence may be found lacking if there is a small amount of or incomplete data or if the applicant pool contains individuals who do not meet the minimal job qualifications. Id. at 2790. However, scientific certainty is not required, only proof by a preponderance of the evidence. See Bazemore v. Friday, 478 U.S. 385, 400 (1986).
 
 
 20
 Once plaintiff has met its initial burden, defendant has the burden of showing that any given requirement has a manifest relationship to the employment in question. Watson, 108 S.Ct. at 2790 (citing Griggs v. Duke Power Co., 401 U.S. 424, 432 (1971)). However, the ultimate burden of proving unlawful discrimination is on the plaintiff. Watson, 108 S.Ct. at 2790.
 
 IV
 
 21
 After a thorough review of the record, this Court cannot say that the District Court's conclusion that plaintiff had failed to establish a prima facie case of disparate impact discrimination is clearly erroneous.
 
 
 22
 Plaintiffs also have argued that the District Court erred in refusing to extend the time in which to apply for class certification and erred in applying principles of res judicata to the Section 1981, 1983, and 1985 claims. In view of the disposition of the disparate impact claims under Title VII, the Court need not address these issues.
 
 
 23
 Accordingly, the District Court's dismissal of this action is affirmed.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Court for the Western District of Michigan, sitting by designation