Harold DAVIS, Plaintiff/Appellant,

v.

TENNESSEE DEPARTMENT OF EM-
PLOYMENT SECURITY, Tennessee
Civil Service Commission, and Marga-
ret Culpepper, in her official capacity
as Commissioner of the Tennessee De-
partment of Employment Security,
Defendants/Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 10, 1999.

Opinion Denying Rehearing Jan. 21, 2000.

Application for Permission to Appeal
Denied by Supreme Court
June 5, 2000.

Larry D. Woods, Nashville, for plaintiff/appellant.

Paul G. Summers, Attorney General and Reporter, James C. Floyd, Assistant Attorney General, for defendants/appellees.

## OPINION

WILLIAM C. KOCH, Jr., Judge.

This appeal involves the efforts of a state employee to obtain judicial review of a written reprimand for repeatedly filing grievances concerning non-grievable matters. After the Civil Service Commission declined to consider his grievance concerning the written reprimand, the employee filed suit in the Chancery Court for Davidson County seeking both judicial review of the Commission's decision under the Uniform Administrative Procedures Act and injunctive and other equitable relief against his employer under the federal civil rights laws. The trial court dismissed the civil rights claims and later dismissed the employee's petition for review because it was not timely filed. On this appeal, the employee takes issue with the dismissal of his petition for review and with the trial court's refusal to reinstate his civil rights claim following the dismissal of his petition for review. We have determined that the trial court properly dismissed both claims and, therefore, affirm the trial court.

### I.

Harold Davis is a career employee of the Tennessee Department of Employment Security. In September 1994, he filed a grievance with the Department complaining that he had been passed over for promotions because of his race. Eight months later, in May 1995, Mr. Davis filed a second grievance alleging disparate working conditions and the denial of promotions because of his race. The Department officials informed him that these sorts of complaints were not grievable matters. Not to be deterred, Mr. Davis filed a third grievance on similar grounds in September 1995. The Department informed him again that he was asserting non-grievable matters.

Thereafter, on September 15, 1995, the Department sent Mr. Davis a written reprimand [1] stating that he had failed to main-

---

1. The written reprimand is not in the record; however, the Department does not dispute that Mr. Davis received a written reprimand.

tain satisfactory and harmonious working relations with his supervisors and fellow employees [2] and that his repeated grievances pertaining to the assessment of the performance of the employees within the federal and data entry units interfered with management's ability to manage.[3] Believing that the written reprimand wrongfully retaliated against him for filing legitimate grievances, Mr. Davis requested Margaret Culpepper, the Commissioner of the Department of Employment Security, to review the reprimand.[4] Following a review conducted by her designee, Commissioner Culpepper concurred in the written reprimand and notified Mr. Davis of her decision in a letter dated October 31, 1995.

Mr. Davis equated Commissioner Culpepper's action with an adverse Step IV grievance decision and, on November 21, 1995, requested a Step V grievance hearing before an administrative law judge. On December 13, 1995, the Civil Service Commission's staff informed Mr. Davis that the Commission lacked authority to consider his grievance because Tenn. Comp. R. & Regs. r. 1120–11–.08(5) (1994) expressly provides that written reprimands are not grievable beyond Step IV. Thereafter, Mr. Davis retained counsel who also requested a Step V grievance hearing before an administrative law judge. On January 29, 1996, the Commission again informed Mr. Davis that his situation involved non-grievable matters because all his complaints related to the internal management of the Department.

Mr. Davis filed suit against the Department and Commissioner Culpepper in the Chancery Court for Davidson County on February 15, 1996. In addition to seeking judicial review of the Civil Service Commission's decision under the Uniform Administrative Procedures Act, Mr. Davis also sought injunctive and other equitable relief against Commissioner Culpepper under the federal civil rights laws. At the outset, the Department and Commissioner Culpepper moved to dismiss Mr. Davis's federal civil rights claims based on the precedents against pursuing appellate remedies and original claims in the same proceeding.[5] Thereafter, the trial court directed Mr. Davis to elect which remedy he wished to pursue or face the dismissal of his federal civil rights claim. When Mr. Davis refused to elect a remedy, the trial court dismissed his civil rights claim without prejudice.

The trial court took up Mr. Davis's petition for review under Tenn.Code Ann. § 4–5–322 (1998) in August 1996. During the hearing, the Department and Commissioner Culpepper moved to dismiss Mr. Davis's petition because it was not timely filed. The trial court granted the motion and dismissed Mr. Davis's petition. Later, the trial court denied Mr. Davis's motion to alter or amend its order of dismissal to include additional findings of fact and conclusions of law.

## II.

■ The determinative issue in this case is the timeliness of Mr. Davis's petition for review. The Uniform Administrative Procedures Act requires persons aggrieved by a final decision of an administrative agency to file their petitions for review within sixty days after the entry of the agency's final order. *See* Tenn.Code Ann. § 4–5–322(b)(1). A party's failure to file a petition for review on or before the statutory deadline prevents the courts from exercising their jurisdiction to review the agen-

---

2. *See* 1120–10–.06(4) (1988).

3. *See* 1120–10–.06(12) (1996).

4. Tenn. Comp. R. & Regs. r. 1120–12–.02 (1988) sets out the procedure for requesting an appointing authority to review a written reprimand.

5. *See State ex rel. Byram v. City of Brentwood,* 833 S.W.2d 500, 502 (Tenn. Ct. App.1991); *Goodwin v. Metropolitan Bd. of Health,* 656 S.W.2d 383, 386–87 (Tenn. Ct. App.1983).

cy's decision. *See Schering–Plough Healthcare Prods., Inc. v. State Bd. of Equalization,* 999 S.W.2d 773, 776 (Tenn. 1999); *Bishop v. Tennessee Dep't of Corr.,* 896 S.W.2d 557, 558 (Tenn. Ct. App.1994).

■ We must first determine when the time for filing Mr. Davis's petition began to run before we can determine whether the sixty-day filing period had passed by the time Mr. Davis filed his petition for review. Both parties agree that the Civil Service Commission's December 13, 1995 letter is the order Mr. Davis seeks the courts to review. The Department and Commissioner Culpepper argue that the time for filing the petition for review began to run on that date. Mr. Davis, on the other hand, insists that the time for filing his petition for review did not begin to run until December 23, 1995 because the Commission's December 13, 1995 letter was an "initial order" that did not become final until ten days after its entry.[6] Mr. Davis is mistaken.

The Uniform Administrative Procedures Act affords state agencies two procedures for deciding contested cases. First, the agency, board, or commission may hear and decide the case itself. *See* Tenn.Code Ann. § 4–5–314(a) (1998). Second, the agency, board, or commission may decide to request an administrative law judge or hearing officer to conduct the hearing and then render an "initial order" that may, in turn, be affirmed or modified by the agency, board, or commission on its own motion or at the request of one of the parties. *See* Tenn.Code Ann. § 4–5–314(b). These initial orders cannot become final until ten days after they are entered. *See* Tenn. Code Ann. § 4–5–318(f)(3) (1998).

Mr. Davis's argument that the December 13, 1995 letter is an initial order loses sight of the fact that this letter represents an order by the Commission, not an order by an administrative law judge or a hearing officer. In the letter, the Civil Service Commission's staff,[7] acting for the Commission, informed Mr. Davis that he was not entitled to a Step V grievance with regard to the written reprimand and stated unequivocally that no further sort of administrative review was available to him. Because this decision, which was fully consistent with the applicable civil service regulations,[8] was a final agency order, it became final when it was entered on December 13, 1995. Accordingly, the time for filing a petition for review began to run on that date. Mr. Davis's petition for review, filed on February 15, 1996, was thus three days late.

### III.

Sensing the futility of his efforts to cast the Civil Service Commission's December 13, 1995 letter as an interim order, Mr. Davis offers two other arguments why the time for filing his petition for review should not be measured from December 13, 1995. First, he argues that the time for filing his petition for review should not begin to run until he actually received the Commission's December 13, 1995 letter. Second, he argues that the running of the filing period should be tolled because he requested the Commission to rehear the decision in its December 13, 1995 letter. Neither argument has merit.

6. Tenn.Code Ann. § 4–5–318(f)(3) (1998) provides that an initial order becomes final within ten days after its entry if no party has filed a petition for appeal and the agency has not given written notice of its intention to exercise review.

7. The Commissioner of Personnel or employees designated by the Commissioner of Personnel provide staff assistance to the Civil Service Commission. *See* Tenn.Code Ann. § 8–30–202(a)(1) (1993).

8. Determinations of a career employee's performance are grievable only through Step IV. *See* Tenn. Comp. R. & Regs. r. 1120–11–.07(7) (1996). Likewise, grievances involving written reprimands are not grievable past Step IV. *See* Tenn. Comp. R. & Regs. r. 1120–11–.08(5).

■ Mr. Davis responded to the motion to dismiss his petition for review by asserting that he had "excusable grounds" for filing his petition beyond the sixty-day period prescribed by Tenn.Code Ann. § 4–5–322(b)(1) because he did not receive the Commission's December 13, 1995 letter until December 30, 1995. This argument has no merit. As we have repeatedly held, the time for seeking judicial review of an agency's decision runs from the date of the entry of the agency's final order, not from a party's receipt of such order. *See Cheairs v. Lawson,* 815 S.W.2d 533, 534 (Tenn. Ct. App.1991); *Houseal v. Roberts,* 709 S.W.2d 580, 581 (Tenn. Ct. App.1984). While some delays in receiving notice of a final order could theoretically be so long that they amounted to no notice or legally insufficient notice to a party, such was not the case here. On the facts of this case, Mr. Davis had ample time - six weeks - to decide whether he wished to seek judicial review of the Commission's decision that he could not press his grievance beyond the fourth step.

■ Mr. Davis also argues that he was entitled to additional time for filing his petition for review because he requested the Commission to reconsider the conclusion in its December 13, 1995 letter. Again, we find no merit to this argument. Tenn.Code Ann. § 4–5–322(b)(2) provides that the time allotted for filing a petition for review is not extended for any period simply by requesting an agency to reconsider a final order.[9]

### IV.

■ Mr. Davis's final argument involves his federal civil rights claim. He points out that the trial court dismissed this claim only because it had been joined improperly with his petition to review the Civil Service Commission's decision. If we affirm the dismissal of his petition for review, he insists that we should reinstate his federal civil rights claim because there will no longer be an impermissible joinder of appellate and original remedies. We decline to reinstate Mr. Davis's federal civil rights action because he failed to request this relief from the trial court.

Mr. Davis does not take issue with this court's decision that it is impermissible to join an appeal from an action of an administrative agency with an original action.[10] Nor does he take issue with the order directing him to elect which of these remedies he desired to pursue or with the trial court's making the decision for him after he declined to make the election himself. Rather, in hindsight, he requests this court to reinstate his federal civil rights claim now that his appellate remedy has been dismissed.

■ The doctrine of election of remedies prevents plaintiffs from seeking inconsistent remedies. *See Wimley v. Rudolph,* 931 S.W.2d 513, 515 (Tenn.1996). Its purpose is to prevent double recoveries. *See Forbes v. Wilson County Emergency Dist. 911 Bd.,* 966 S.W.2d 417, 421 (Tenn.1998); *Purcell Enters., Inc. v. State,* 631 S.W.2d 401, 409 (Tenn. Ct. App.1981). However, as laudable as its purpose is, the doctrine of election of remedies is a harsh one that the courts do not favor. *See Lund v. Albrecht,* 936 F.2d 459, 464 (9th Cir.1991); *Beyer v. Easterling,* 738 So.2d 221, 226–27 (Miss.1999); *Ripple v. Wold,* 549 N.W.2d 673, 674 (S.D.1996); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4476, at 773 (1981).

---

9. The time for filing a petition for review will be tolled only if the agency grants the petition for reconsideration. *See* Tenn.Code Ann. § 4–5–317(e) (1998). Accordingly, commentators have recommended filing a petition for reconsideration and a petition for review simultaneously in order to avoid any questions about the timeliness of the petition for review.

*See* William P. Kratzke, *A Review of Contested Case Provisions of the Tennessee Uniform Administrative Procedures Act,* 13 U. Mem. L.R. 551, 582 (1983).

10. *See State ex rel. Byram v. City of Brentwood,* 833 S.W.2d at 502; *Goodwin v. Metropolitan Bd. of Health,* 656 S.W.2d at 386–87.

The doctrine requires a plaintiff who is seeking inconsistent remedies · to choose one of the remedies. Once made, this choice becomes irrevocable, and the plaintiff is thereafter estopped from pursuing the remedy not chosen. *See Barnes v. Walker,* 191 Tenn. 364, 368, 234 S.W.2d 648, 650 (1950); *Allied Sound, Inc. v. Neely,* 909 S.W.2d 815, 822 (Tenn. Ct. App. 1995); *Hayes v. Civil Serv. Comm'n,* 907 S.W.2d 826, 828 (Tenn. Ct. App.1995). However, with the advent of the liberalized pleading rules, most courts will not invoke the doctrine unless (1) the plaintiff has prosecuted the chosen remedy either to final judgment or a determinative conclusion, *see Gottschalk v. Simpson,* 422 N.W.2d 181, 185 (Iowa 1988); *Christensen v. Eggen,* 577 N.W.2d 221, 224 (Minn.1998); *Alexander v. Link's Landing, Inc.,* 814 S.W.2d 614, 620–21 (Mo.Ct.App.1991); *Family Bank of Commerce v. Nelson,* 72 Or.App. 739, 697 P.2d 216, 218 (Or.Ct.App. 1985), or (2) the defendant has materially changed its position based on the plaintiff's choice of remedy. *See Ripple v. Wold,* 549 N.W.2d at 675–76. Thus, most courts permit a party to change to an alternative remedy until judgment is entered or until the doctrines of res judicata or collateral estoppel apply. *See Smith v. Golden Eagle Ins. Co.,* 69 Cal.App.4th 1371, 82 Cal. Rptr.2d 300, 303 (1999).

Although the decisions are not without some doubt, the Tennessee Supreme Court appears to have recognized the controlling significance of a final judgment in an election of remedies analysis. The Court has held that the doctrine applies once the plaintiff obtains a judgment on one of its inconsistent claims, even if it is later unable to satisfy the judgment. *See Phillips*

*v. Rooker,* 134 Tenn. 457, 465–66, 184 S.W. 12, 14 (1916). However, the Court has also noted that the doctrine does not apply when the plaintiff elects to pursue a remedy that is legally or factually unavailable. *See Montlake Coal Co. v. Chattanooga Co.,* 137·Tenn. 440, 444–45, 193 S.W. 1057, 1058 (1917); *Grizzard v. Fite,* 137 Tenn. 103, 108, 191 S.W. 969, 970 (1917), *rev'd on other grounds, Barnes v. Walker,* 191 Tenn. 364, 372, 234 S.W.2d 648, 651 (1950).[11]

Mr. Davis did not request the trial court to reinstate his federal civil rights claim. Had this request been included in his Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment, we would have held, without hesitation, that the trial court erred by denying this request. However, Mr. Davis did not bring this question to the trial court's attention and did not request the relief he is seeking now from this court. . A claim for relief or issue not asserted or raised at trial cannot be asserted or raised for the first time on appeal. *See Simpson v. Frontier Cmty. Credit Union,* 810 S.W.2d 147, 153 (Tenn. 1991); *State Dep't of Human Servs. v. Defriece,* 937 S.W.2d 954, 960 (Tenn. Ct. App.1996). Mr. Davis is not entitled to the relief he now seeks because he failed to seek the same relief in the trial court. *See* Tenn. R.App. P. 36(a).[12]

### V.

We affirm the dismissal of Mr. Davis's petition for review and his federal civil rights claim and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Harold Davis and his surety

**11.** Notwithstanding its recognition of the idea that the doctrine of election of remedies does not apply when the chosen remedy has not been prosecuted to a final judgment, the Court held that the proper action for the plaintiff is to dismiss the claim for the inconsistent remedy rather than to amend the complaint to include the remedy that is available. *See Montlake Coal Co. v. Chattanooga Co.,* 137 Tenn. at 449–51, 193 S.W. at 1059. Tenn. R.

Civ. ·P. 8.01 calls into question the *Montlake* court's predilection against alternative claims for relief.

**12.** We note that our dismissal may not ultimately foreclose Mr. Davis's federal civil rights claim because the trial court dismissed this claim without prejudice.

for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.

## OPINION ON PETITION
## FOR REHEARING

Harold Davis has filed a timely and courteous Tenn.R.App.P. 39 petition requesting this court to reconsider its opinion filed in this case on December 10, 1999. The petition raises two issues. First, Mr. Davis questions the impartiality of a member of this court. Second, Mr. Davis asserts that the court should have reinstated his civil rights claim that had been dismissed by the trial court. We have determined that Mr. Davis has not presented grounds entitling him to further relief.

### I.

This appeal involves procedural issues arising out of Mr. Davis's efforts to remove from his personnel file a written reprimand for repeatedly filing grievances involving matters that were not grievable.[1] After the Tennessee Civil Service Commission definitively informed him that he had not stated a grievable matter under the law as it existed at the time, Mr. Davis, contrary to well-established case law,[2] filed suit in the Chancery Court for Davidson County seeking legally inconsistent remedies—judicial review of the Civil Service Commission's refusal to entertain his grievance and equitable relief and legal expenses for the alleged violation of his civil rights. The parties and the courts have consumed the past four years attempting to straighten out this procedural morass.

1. We have not been asked on this appeal to address the merits of any of Mr. Davis's grievances.

2. *See State ex rel. Byram v. City of Brentwood,* 833 S.W.2d 500, 502 (Tenn. Ct. App.1991); *Goodwin v. Metropolitan Bd. of Health,* 656 S.W.2d 383, 386–87 (Tenn. Ct. App.1983).

At the outset, the trial court requested Mr. Davis to elect which of the two inconsistent remedies he desired to pursue. When Mr. Davis refused to elect between the requested remedies, the trial court dismissed his civil rights claim without prejudice.[3] Later, the trial court dismissed the remainder of Mr. Davis's suit when it discovered that the petition for judicial review had not been filed within the time required by Tenn.Code Ann. § 4–5–322(b)(1). Mr. Davis appealed to this court, and on December 10, 1999 we filed an opinion affirming the trial court.

### II.

#### THE IMPARTIALITY CLAIMS

We first take up Mr. Davis's challenge to Judge Koch's participation in this case. After knowing for many months that Judge Koch was a member of the panel considering his appeal, Mr. Davis waited until the court had filed its December 10, 1999 decision to question Judge Koch's impartiality based upon a long-since concluded, unrelated federal case. Using the objective tests applicable to issues of this sort, we have concluded (1) that Mr. Davis lost his opportunity to question Judge Koch's impartiality by waiting until after the case had been decided to raise the issue and (2) that even had Mr. Davis properly raised this claim, no reasonable, disinterested person knowing all the relevant facts would question Judge Koch's impartiality in this case.

#### A.

Mr. Davis has provided few facts to support his argument regarding Judge

3. Unfortunately, Mr. Davis's decision to engage in this procedural wrangling has prevented the prompt resolution of his civil rights claim. He could have refiled the claim in a separate proceeding any time after May 10, 1996, the date on which it was dismissed without prejudice. Instead, he chose to appeal the trial court's decision to dismiss the claim in this case.

Koch's impartiality.[4] We gather from his petition that Mr. Davis now asserts that Judge Koch, who was Tennessee's Commissioner of Personnel from 1979 to 1981,[5] cannot impartially adjudicate the procedural issues on this appeal because he was one of several defendants in an action in federal court styled *Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. State of Tennessee, Dep't of Employment Sec.* which was filed in March 1981[6] and concluded in the defendants' favor some time after April 1990.[7]

Minority Employees of the Tennessee Department of Employment Security, Inc. ("METDES"), according to its original complaint in federal court, had seventy-eight members who were employees of the Department of Employment Security.[8] The federal lawsuit naming then Commissioner Koch as one of the defendants was filed in the name of the corporation and three of its individual members.[9] Mr. Davis was not one of the individually named plaintiffs. The complaint sought monetary and injunctive relief on behalf of a class of employees of the Department of Employment Security. The United States District Court first declined to certify the action as a class action;[10] then held that the corporation could not seek monetary damages in its representative capacity,[11] and finally dismissed the action altogether for failure to establish a prima facie case of racial discrimination.[12] The United States Court of Appeals for the Sixth Circuit, sitting en banc, ultimately dismissed the individual parties' appeal on procedural grounds and affirmed the district court's conclusion that METDES had failed to make out a prima facie case of disparate impact. *See Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. State of Tennessee, Dep't of Employment Sec.,* 901 F.2d at 1334, 1337.

4. These assertions, quoted in their entirety, are:

Judge William Koch, in his former capacity as Commissioner of [t]he Tennessee Department of Personnel, was named as a defendant in the case of *Minority Employees of the Tennessee Department of Employment Security, Inc., et al. v. State of Tennessee Department of Employment Security et al.,* in the U.S. District Court for the Middle District of Tennessee (Nashville Division, no. 81–3114). Mr. Davis was one of the participants in this federal lawsuit through his involvement and participation with Minority Employees of the Tennessee Department of Employment Security, Inc. Further said federal lawsuit raised allegations of racial discrimination in the Department of Employment Security (relating to attempts to change the personnel system maintained by the Department of Personnel and used by the Department of Employment Security) just as allegations of racial discrimination in the same department are being raised in this case.

5. *See* Riley C. Darnell, *Tennessee Blue Book 1999–2000,* at p. 269.

6. *See Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. State of Tennessee, Dep't of Employment Sec.,* No. 88–5429, 1989 WL 74523, at *1 (6th Cir. July 10, 1989) (unpublished table decision).

7. *See Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. State of Tennessee, Dep't of Employment Sec.,* 901 F.2d 1327 (6th Cir.1990) (en banc).

8. *See Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. State of Tennessee, Dep't of Employment Sec.,* 573 F.Supp. 1346, 1348 (M.D.Tenn.1983).

9. The individual plaintiffs included Rosetta N. Davis, Alma C. Oliver, and Hazel Perry. *See Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. State of Tennessee, Dep't of Employment Sec.,* 901 F.2d 1327 (6th Cir. 1990).

10. *See Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. State of Tennessee, Dep't of Employment Sec.,* 573 F.Supp. at 1348.

11. *See Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. State of Tennessee, Dep't of Employment Sec.,* 573 F.Supp. at 1349–50.

12. *See Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. State of Tennessee, Dep't of Employment Sec.,* No. 88–5429, 1989 WL 74523, at *1.

## B.

### THE TIMELINESS OF MR. DAVIS'S IMPARTIALITY COMPLAINT

▮ We turn first to the question of the timeliness of Mr. Davis's questions regarding Judge Koch's impartiality. Parties may lose the right to question a judge's impartiality if they attempt to manipulate the impartiality issue to gain procedural advantage. *See Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App.1998). Accordingly, recusal motions must be filed promptly after the facts forming the basis for the motion become known, *see United States v. Baker*, 441 F.Supp. 612, 616 (M.D.Tenn.1977), and the failure to seek recusal in a timely manner results in a waiver of a party's right to question a judge's impartiality. *See In re Cameron*, 126 Tenn. 614, 663, 151 S.W. 64, 78 (1912); *Radford Trust Co. v. East Tenn. Lumber Co.*, 92 Tenn. 126, 136–37, 21 S.W. 329, 331 (1893); *Holmes v. Eason*, 76 Tenn. 754, 761 (1882).

▮ Mr. Davis and his lawyer have known since oral argument that Judge Koch is a member of the panel of judges deciding the present controversy. They must also have been aware of Judge Koch's connection with the *Minority Employees* litigation. Unlike Mr. Davis, Judge Koch was *a named party* in that action. Accordingly, we can only conclude that Mr. Davis and his lawyer, knowing of Judge Koch's connection with the *Minority Employees* litigation, purposely decided to use the impartiality issue as their "ace-in-the-hole" in the event that they lost the appeal on the merits.

Tenn.R.App.P. 36(a) provides that parties who are responsible for an error or who fail to take reasonably available steps to prevent an error, are not entitled to appellate relief based on the error. As other courts reviewing similar circumstances have held: "One cannot know of [allegedly] improper judicial conduct, gamble on a favorable result by remaining silent as to that conduct, and then complain that he or she guessed wrong and does not like the outcome." *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591, 610 (1998). Based on these authorities, Mr. Davis waived his opportunity to question Judge Koch's impartiality by failing to raise the question as soon as practicable after discovering that Judge Koch had been assigned to the case.

## C.

### THE SUBSTANCE OF MR. DAVIS'S IMPARTIALITY COMPLAINT

▮ Even though we have concluded that Mr. Davis's challenge to Judge Koch's participation in this case comes too late, we choose to address his claim because of the importance of preserving the public's confidence in judicial neutrality. All litigants have a right to have their cases heard by fair and impartial judges. *See Kinard v. Kinard*, 986 S.W.2d at 227–28. Based on the facts Mr. Davis has brought forward, he has had the benefit of the "cold neutrality of an impartial court." *Leighton v. Henderson*, 220 Tenn. 91, 98, 414 S.W.2d 419, 421 (1967).

▮ Parties who challenge a judge's impartiality must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned. *See* Tenn.S.Ct.R. 10, Canon 3(E)(1); *Chumbley v. People's Bank & Trust Co.*, 165 Tenn. 655, 659, 57 S.W.2d 787, 788 (1933); *Holley v. Holley*, No. E1998–00438–COA–R3–CV, 1999 WL 1131322, at *4 (Tenn. Ct. App. Dec.10, 1999) *perm. to appeal denied*, (Tenn. July 24, 2000). Impartiality concerns involve a judge's personal bias or prejudice against a litigant, not a judge's general opinion about the legal or social issues involved in a pending case. *See Caudill v. Foley*, No. M1999–02006–COA–R3–CV, 1999 WL 976597, at *10 (Tenn. Ct. App. Oct. 28, 1999), *perm. to appeal denied*, (April 17,

2000) (quoting Jeffrey M. Shaman et al. *Judicial Conduct and Ethics* § 4.04, at 101–02 (2d ed.1995)).

The appellate record in this case, together with the opinions in the *Minority Employees* litigation in federal court, support the following conclusions: (1) the judicial review of this case commenced sixteen years after Judge Koch served as Commissioner of Personnel and seven years after the *Minority Employees* litigation was concluded in the defendants' favor; (2) prior to Mr. Davis's petition for rehearing, the appellate record did not indicate that Mr. Davis was a member of METDES or that he played any cognizable role in the *Minority Employees* litigation; [13] (3) the record does not show that Judge Koch had any personal knowledge of Mr. Davis or of Mr. Davis's connection with METDES or the *Minority Employees* litigation; and (4) Mr. Davis's membership in METDES is irrelevant to any of the issues raised on this appeal.

In addition to these facts, the most significant gap in Mr. Davis's argument is that he has failed to demonstrate any substantive connection between the legal or factual issues involved in the *Minority Employees* litigation and the issues in this case. This lack of proof is not coincidental. The facts giving rise to this case—the Department of Employment Security's decision to issue a written reprimand for repeatedly attempting to grieve matters that were not grievable at the time—did not occur until five years after the *Minority Employees* litigation had been concluded. Accordingly, the facts involved in this case were not, and could not have been, part of the *Minority Employees* litigation. In addition, grounds upon which the trial court dismissed Mr. Davis's claims in this case were not at issue in the *Minority Employees* litigation.

Mr. Davis has failed to present any evidence that Judge Koch is or was biased or prejudiced against him personally or against METDES. Based on the undisput-

ed facts in this record, we conclude that reasonable, disinterested persons would conclude that Judge Koch's involvement in the *Minority Employees* litigation in federal court does not provide grounds to question his impartiality in this case. Accordingly, the portion of Mr. Davis's petition for rehearing that questions Judge Koch's impartiality is without merit.

### III.

#### THE REINSTATEMENT OF MR. DAVIS'S CIVIL RIGHTS CLAIM

Mr. Davis's second argument is that this court should have held that the trial court erred by failing to reinstate his civil rights claim after it dismissed his petition for judicial review. In our December 10, 1999 opinion, we declined to hold the trial court in error based on our conclusion that Mr. Davis had not properly requested this relief in the trial court or on appeal. Mr. Davis now questions this conclusion by pointing out that he requested the reinstatement of this civil rights claim as an "alternative" remedy both in the trial court and on appeal.

#### A.

Mr. Davis filed only one post-judgment motion after the trial court dismissed his petition for judicial review of the Civil Service Commission's refusal to consider his grievance. This motion did not request reinstatement of Mr. Davis's civil rights claim. Rather, it requested the trial court (1) to make additional findings of fact and conclusions of law, (2) to amend the final order by including a provision remanding the case to the Civil Service Commission for entry of a proper order, and (3) to address the merits of his claim that Civil Service Commission's decision was not supported by substantial and material evidence. It was only in a "reply" to the Civil Service Commission's opposition to his post-judgment motion that Mr. Davis, seemingly as an after-thought, asked for

---

**13.** Mr. Davis apparently concedes that his only connection with the Minority Employees litigation was through his "involvement and participation with Minority Employees of the Tennessee Department of Employment Security, Inc."

the reinstatement of his civil rights action as an alternative to the remedies sought in his post-judgment motion. The record does not indicate whether the trial court actually considered this alternative prayer for relief.

Mr. Davis then raised four issues on his appeal to this court. These issues involved (1) the trial court's interpretation of Tenn. Code Ann. § 4–5–318(f)(3), (2) the trial court's reliance on *Goodwin v. Metropolitan Bd. of Health* as precedent for dismissing his civil rights claim, (3) the trial court's refusal to remand the case to the Civil Service Commission for a hearing on his grievance, and (4) the evidentiary foundation for the Civil Service Commission's action. The principal relief Mr. Davis requested on appeal was a reversal of the trial court's dismissal of his petition for review and an order directing the Civil Service Commission to conduct a hearing on his grievance. As an alternative, Mr. Davis suggested that the case could be remanded for a trial on his civil rights claim.

**B.**

Our original decision that the trial court did not err by failing to reinstate Mr. Davis's civil rights claim rested on our conclusion that the manner in which Mr. Davis requested this relief did not comply with Tenn.R.Civ.P. 7.02(1). This rule requires that motions "state with particularity the grounds therefor" and "set forth the relief or order sought." Mr. Davis's post-judgment motion does not request reinstatement of his civil rights claim.

Post-judgment motions must specify the relief sought and must also set forth the grounds warranting that relief. *See Droen v. Wechsler*, 271 Ill.App.3d 332, 208 Ill.Dec. 59, 648 N.E.2d 981, 983 (1995). They are construed like pleadings, *see Evers v. Hollman*, 196 Tenn. 364, 368, 268 S.W.2d 97, 99 (1954), and accordingly, they should contain a demand for the specific relief sought, including any requests for relief in the alternative. *See* Tenn.R.Civ.P. 7.02(1) and 8.01. While these rules do not require any particular form for motions, Tenn.

R.Civ.P. 7.02(1)'s particularity requirement obliges parties to inform the court what relief they want and to give the court enough information to process the motion correctly. *See Registration Control Sys., Inc. v. Compusystems, Inc.*, 922 F.2d 805, 807 (Fed.Cir.1990).

The rules governing appeals contain similar particularity requirements. Tenn. R.App.P. 27(a)(4) requires the appellant's brief to include a statement of issues presented for review, and Tenn.R.App.P. 13(b) states that appellate review, as a general matter, will extend only to the issues presented for review. Thus, the appellate courts have held consistently that issues not included in the appellant's brief will not be considered on appeal. *See Fite v. State*, 925 S.W.2d 543, 545 (Tenn. Ct. App.1996).

Mr. Davis did not request the reinstatement of his civil rights claim in his post-judgment motion and did not amend this motion to add this prayer for relief. Rather, he alluded to reinstatement of his civil rights claim as an alternative remedy in his reply to the Civil Service Commission's opposition to his post-judgment motion. Mr. Davis's handling of the reinstatement issue on appeal is similar. He never took direct issue with the trial court's failure to reinstate his civil rights claim. Rather, he argued, in the alternative, we should reinstate his civil rights claim if we were not going to order the trial court to remand the case to the Civil Service Commission. Only by the most liberal, elastic construction of the rules can we conclude that Mr. Davis appropriately sought the reinstatement of his civil rights claim both in the trial court and on appeal.

**C.**

In our December 10, 1999 opinion, we declined to consider Mr. Davis's request for the reinstatement of his civil rights claim because he had not requested this relief at trial or on appeal in the manner envisioned by the procedural rules. For the purpose of this petition for rehearing, we will give Mr. Davis the bene-

**316**

fit of the most liberal construction of Tenn. R.Civ.P. 7.02(1) and Tenn.R.App.P. 13(b) and 27(a)(4), and we will presume that he has properly raised the issue. This brings us squarely back to the question whether the trial court should have reinstated Mr. Davis's civil rights claim after it dismissed his petition for judicial review.

We stated in our December 10, 1999 opinion that had Mr. Davis properly raised the issue, we would have held that the trial court erred by denying his request to reinstate his civil rights claim. Upon reconsideration, we have determined that our original conclusion is incorrect and that the trial court did not err by declining to reinstate Mr. Davis's civil rights claim after it dismissed his petition for judicial review. A contrary holding would only encourage litigants like Mr. Davis to continue to pursue inconsistent remedies in the same case in contravention of *State ex rel. Byram v. City of Brentwood*, 833 S.W.2d 500 (Tenn. Ct. App.1991) and *Goodwin v. Metropolitan Bd. of Health*, 656 S.W.2d 383 (Tenn. Ct. App.1983).

We see no basis for departing from settled case law simply because the trial court was forced to dismiss one of Mr. Davis's inconsistent remedies when he refused to elect a remedy or because the surviving remedy proved to be procedurally defective. The principle vindicated in this case is that parties in circumstances like Mr. Davis's must pursue their claims for judicial review of administrative decisions and their claims for original relief in separate proceedings. Doing so will avoid the procedural morass from which the parties and the courts in this case have been trying to extricate themselves ever since 1996.

Our review of the record leads us again to the inescapable conclusion that Mr. Davis is the author of his own misfortune. His persistent pursuit of inconsistent remedies in the same action has frustrated and delayed judicial consideration of his claim that the Department of Employment Security violated his civil rights by issuing a written reprimand for attempting to grieve matters that were not grievable at the time. Nothing in either our December 10, 1999 opinion or in this opinion prevents Mr. Davis from pursuing his claim in a appropriate forum if he so chooses. However, neither of our decisions should be construed to reflect an opinion concerning the merits of Mr. Davis's civil rights claim or its likelihood of success.

**IV.**

Mr. Davis's petition for reconsideration of our December 10, 1999 opinion is denied for the reasons stated herein. The costs associated with the petition for rehearing are taxed to Harold Davis and his surety for which execution, if necessary, may issue.

/s/ Samuel L. Lewis
Samuel L. Lewis, Judge

/s/ Ben H. Cantrell
Ben H. Cantrell, Judge

/s/ William C. Koch, Jr.
William C. Koch, Jr., Judge