IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 21, 2004 Session

# WAYNE JERROLDS v. ROBERT D. KELLEY and wife, MITSY KELLEY v. EDDIE K. WHITLOW, TRUSTEE FOR THE HARDIN COUNTY BANK

**Direct Appeal from the Chancery Court for Hardin County**
**No. 5920     C. Creed McGinley, Judge, Sitting by Interchange**

_____

**No. W2003-00739-COA-R3-CV - Filed April 30, 2004**

_____

This cases involves an action for declaratory judgment regarding an easement for the benefit of a landlocked parcel. The lower court found that an easement does exist and that the owners of the servient parcel are not entitled to monetary damages. On appeal, the owners of the servient parcel maintain that the lower court demonstrated bias in its comments from the bench and, further, that it erred in failing to award damages. For the following reasons, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Ken Seaton, Selmer, TN, for Appellants

Dennis W. Plunk, Savannah, TN, for Appellee

## OPINION

### Facts and Procedural History

In 1998, Wayne Jerrolds ("Jerrolds") acquired a ten acre tract in Hardin County, Tennessee that adjoined a public road known as Burks Lane. Jerrolds subsequently sold a five-acre portion of the land to James Yerby ("Yerby"). Yerby's five acre parcel contained all the land that abutted Burks Lane, leaving Jerrolds with a five acre parcel isolated from any public road. Ingress and egress from the Jerrolds parcel was achieved by use of a driveway that ran from Burks Lane across the Yerby parcel. In May 1999, Jerrolds conveyed by deed his five acre parcel to Ricky DeShazier, who then reconveyed the parcel back to Jerrolds on March 18, 2000. Then, on September 15, 2000,

Yerby conveyed his five acre tract, which fronted the public road, to the Defendants, Robert and Mitsy Kelley ("the Kelleys").

None of the deeds in any of the above conveyances mentioned the driveway that crossed the tract with road access for the benefit of the isolated parcel. The Kelleys, upon purchase of the tract fronting Burks Lane, erected fencing that obstructed Jerrolds' use of the driveway. Jerrolds then filed a declaratory judgment action in Hardin County Chancery Court, seeking a declaration that an easement across the Kelleys' land existed for the benefit of Jerrolds' property. The Kelleys answered that no such easement existed in the chain of title. They further argued that, if the court were to create such an easement, they should be entitled to damages for the devaluation of their land.

A non-jury trial was held before the Chancellor on November 21, 2002. At the conclusion of this hearing, the Chancellor told the parties the substance of his intended ruling. He found that the access road at issue was in existence at the time the Kelleys purchased their property, that its existence was open and obvious, and that the failure to list it in the chain of title was merely a result of mutual mistake and inadvertence on the part of Jerrolds and Yerby. The Chancellor further stated that he would not award damages to the Kelleys, because they did not adduce sufficient evidence on the matter. After this hearing, the Kelleys filed a Rule 59 motion, seeking the lower court's permission to present additional expert testimony regarding the devaluation of their property. The Chancellor denied this motion and entered its decree on January 27, 2003. In its decree, the lower court simply memorialized the substance of the oral ruling given at the conclusion of the November 21, 2002 hearing.

The Kelleys then appealed the trial court's ruling. There was no transcript of the trial, so the Kelleys prepared a proposed Statement of Evidence. In one of their issues on appeal, the Kelleys alleged that the Chancellor's ruling was the result of bias. They sought to include in the Statement of Evidence a statement purportedly made by the Chancellor during the course of his ruling at the conclusion of the November 21, 2002 hearing. The relevant statement reads as follows: "I have always detested these situations where people choose to possess the property they own in such a way so as to refuse to give their neighbor a right to cross their property in cases such as this." The lower court held a post-trial hearing, which was transcribed, on the proposed Statement of Evidence. At this hearing, the Chancellor conceded that he had likely made a statement, in the context of a long and detailed ruling, that was similar to the one alleged in the proposed Statement of Evidence.[1] The Chancellor was vehement, however, that his comment was not indicative of any personal prejudice or animosity, stating that "[I] might have detested [Mr. Kelley's] actions, but I do not detest him as a person." Counsel for the Kelleys agreed, stating that "[I] certainly didn't take it that way and I don't think Mr. Kelley took it that way." After the hearing, the Chancellor approved a Statement of Evidence without mention of the purportedly biased comment.

---

[1] On two occasions, the Chancellor conceded that "a similar comment might have been made in the entire context of the Court's rulings" and that "I might have used words of similar import in the context of the entire ruling."

-2-

On appeal, the Kelleys ask this Court to reverse the Chancellor's ruling and remand for a new trial on the issue of damages. The Kelleys premise their appeal on two grounds. First, as mentioned above, they allege that the Chancellor's decision was affected by his bias against landowners who seek to resist the imposition of an easement. The Kelleys also maintain that the Chancellor's ruling denying damages was contrary to the preponderance of evidence. They allege that Mr. Kelley testified that the easement decreased the value of his land by $5,000 and that the Jerrolds failed to present any evidence to rebut this amount. The trial court refused to include this testimony in the Statement of Evidence. At the post-trial hearing, the Chancellor stated that he remembered Mr. Kelley giving a clearly unreasonable figure, such as $50,000, rather than the alleged $5,000 amount. The Kelleys maintain that the Chancellor erred in excluding this testimony from the Statement of Evidence and that the testimony provides a sufficient basis for an award of damages.

## Issues

The Kelleys raise two issues on appeal:

I.      Whether the Chancellor's statements and conduct demonstrate bias, thereby providing sufficient grounds for a new trial.

II.     Whether the Chancellor erred in finding that the Kelleys failed to produce sufficient evidence to support an award of monetary damages.

## Standard of Review

This case was tried by the lower court sitting without a jury. Consequently, our review of the trial court's findings of fact is *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002). With respect to the lower court's conclusions of law, our review is *de novo*, with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569.

## The Conduct of the Trial Court

The Kelleys maintain that the Chancellor made a statement at trial that demonstrated a bias against landowners who resist the imposition of an easement for the benefit of a neighbor. The Chancellor, however, did not include the alleged comment in the Statement of Evidence. We will, therefore, first address the lower court's ruling excluding the statement at issue.

As a general rule, the trial court's decision regarding a statement of evidence is conclusive. Tenn. R. App. P. 24(e); *Parker v. Parker*, No. 01A01-9504-CH-00138, 1996 WL 557816, at *3 (Tenn. Ct. App. Oct. 2, 1996). In *Hall v. Hall*, 772 S.W.2d 432 (Tenn. Ct. App. 1989), we discussed this issue in some detail:

Any question as to the accuracy of a transcript or statement of the evidence is to be submitted to and settled by the Trial Court, whose determination is conclusive absent extraordinary circumstances. Tenn. R. App. P. 24(c), (e). The only resources of a trial judge for resolving such questions are (1) the memory of the trial judge, (2) memoranda of the trial judge, and (3) an evidentiary hearing to establish what evidence was presented during the trial. The third resource is seldom used, but, if used, and the evidence at such hearing is preserved on appeal, the appellate court might find some support therein for revision of the evidentiary record.

*Id*. at 435. The issue in the present case, then, is whether the evidence presented at the post-trial hearing, which was transcribed, supports revision of the evidentiary record. Having reviewed the relevant authority, we find that it does. We considered a similar situation in *Parker*, in which the trial judge was accused of making a statement that might demonstrate bias. In that case, we found:

At the post-trial hearing in the present case, the trial judge essentially conceded that he had made remarks similar to those in dispute, excluding the parenthetical [commentary added by Wife]. In light of this, we hold that the trial court erred in excluding the statement from the Statement of Evidence. However, the trial court properly excluded the parenthetical portion of Wife's proposed statement that offered Wife's interpretation of the import of the trial judge's remarks.

*Parker*, 1996 WL557816, at *4. In the instant case, the Chancellor likewise admitted that he made similar comments to those included in the Kelley's proposed Statement of Evidence. He seemed concerned, however, about the possible misperception that he detested Mr. Kelley as a person rather than simply detesting the concept of conflict between neighbors over the use of their land. The language proposed by the Kelleys in their revised Statement of Evidence, however, is careful to make this distinction. As the Chancellor himself admitted that the proposed statement is similar to the remarks he made during his ruling, it was error to exclude the statement from the Statement of Evidence.

Having resolved the evidentiary aspect of this matter, we now turn to the substance of the judicial bias issue. As an initial matter, we recognize the core principle that "all litigants have a right to have their cases heard by fair and impartial judges." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). In order to preserve the public's confidence in judicial neutrality, judges must not only be impartial in fact, but must also be perceived to be impartial. *Id*. Accordingly, even when a trial judge feels that he or she can hear a case fairly and impartially, the judge should recuse himself or herself in a proceeding "in which the judge's impartiality might reasonably be questioned." Tenn. Sup. Ct. R. 10, Canon 3(E)(1); *Kinard*, 986 S.W.2d at 228. The decision of whether recusal is warranted must be made, initially, by the trial judge. *Kinard*, 986, S.W.2d at 228. This decision is discretionary, unless the basis for recusal is mandated by the Tennessee Constitution or by statute. *Id*. *See* Tenn. Const. art. 6, § 11; Tenn. Code Ann. § 17-2-101 (2000). The judge, however, must attempt to make an objective determination by asking "what a reasonable,

disinterested person knowing all the relevant facts would think about his or her impartiality." *Kinard*, 986 S.W.2d at 228.

Parties, however, may lose the right to challenge a judge's impartiality if they do not timely file recusal motions soon after they become aware of the facts giving rise to the motion. *Id*. *See also Eldridge v. Eldridge*, No. W2000-00730-COA-R3-CV, 2002 WL 1838145, at *3 (Tenn. Ct. App. Aug 8, 2002) (citing *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998)). This Court will not allow parties to gain procedural advantage by silently preserving a prejudicial event as an "ace-in-the-hole" to be used in the event of an adverse decision. *Kinard*, 986 S.W.2d at 228; *Eldridge*, 2002 WL 1838145, at *3. In the present case, the Kelleys failed to question the Chancellor's impartiality by filing a motion to recuse in this matter. Instead, they raised the issue for the first time on appeal. We note that the statement purportedly showing bias was uttered during the trial court's recitation of its ruling at the conclusion of the trial. We must also note, however, that the trial court waited some three months to issue a written decree and, further, that the Kelleys filed a Rule 59 motion in the interim. The Kelleys had the opportunity to raise the issue of recusal during this time, and they declined to do so. As we held in *Eldridge*, "[t]his compels the conclusion that [the Kelleys] 'purposely decided to use the impartiality issue as [their] ace-in-the-hole in the event that [they] lost the [trial] on the merits.'" *Eldridge*, 2002 WL 1838145, at *3 (citing *Davis v. Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999)). Consequently, we hold that "any argument concerning the [Chancellor's] alleged bias or impropriety in this case is waived and must necessarily be viewed with skepticism." *Id*.

Although the Kelley's issue regarding the alleged bias of the Chancellor is waived, we will briefly address the merits of their claim in order to preserve the public's confidence in judicial neutrality. *Id*. The Kelleys maintain that the following statement demonstrates the Chancellor's bias: "I have always detested these situations where people choose to possess the property they own in such a way so as to refuse to give their neighbor a right to cross their property in cases such as this." We cannot agree that this demonstrates bias. We have held:

> Bias and prejudice are only improper when they are personal. A feeling of ill will or, conversely, favoritism towards one of the parties to a suit are what constitute disqualifying bias or prejudice . . . . Despite earlier fictions to the contrary, it is now understood that judges are not without opinions when they hear and decide cases. Judges do have values, which cannot be magically shed when they take the bench.

*Mayes v. Lemonte*, 122 S.W.3d 142, 146 (Tenn. Ct. App. 2003) (quoting *Caudill v. Foley*, 21 S.W.3d 203, 214 (Tenn. Ct. App. 1999)). Likewise, in *Wilson v. Wilson*, 987 S.W.2d 555 (Tenn. Ct. App. 1998), we found that "[m]ost trial judges, we suspect, have strong feelings about certain types of behavior or conduct. When the judge perceives that one party or the other has engaged in that conduct, the party should not be surprised that he/she has incurred the judge's wrath." *Id*. at 562. We find this line of reasoning to be instructive in the present case. The Chancellor's comment, as drafted by the Kelleys in their proposed Statement of Evidence, does not demonstrate any personal animosity or ill will toward the Kelleys as individuals. Instead, the statement merely indicates that

the Chancellor has strong feelings about a certain type of conduct, namely, the refusal of a landowner to allow his neighbor access over his land. Accordingly, the Kelleys' allegation of judicial bias would ultimately fail on its merits, absent waiver of the issue.

## Damages Resulting from the Easement

In their final issue on appeal, the Kelleys maintain that the lower court erred in refusing to grant them monetary damages. Within this issue, the primary source of contention concerns the testimony given by Mr. Kelley at trial. There is no dispute that the only evidence presented by either party on the issue of damages was the testimony of Mr. Kelley. The Chancellor and the Kelleys do, however, disagree as to the dollar amount given by Mr. Kelley at trial. In their proposed Statement of Evidence, the Kelleys maintained that Mr. Kelley testified that the easement devalued his land in the amount of $5,000. At the post-trial hearing, the trial court disagreed with this statement of the testimony. Instead, the Chancellor remembered Mr. Kelley giving the "astronomical figure" of $50,000, which the lower court felt to be clearly unreasonable. Accordingly, the lower court excluded from the Statement of Evidence the estimate of $5,000 purportedly given by Mr. Kelley at trial.

As we stated earlier, any issue regarding the accuracy of a statement of evidence is to be settled by the trial court, whose determination is conclusive absent extraordinary circumstances. Tenn. R. App. P. 24(c), (e); *Hall v. Hall*, 772 S.W.2d 432, 435 (Tenn. Ct. App. 1989). The resources of a trial judge for resolving these issues are (1) the memory of the trial judge, (2) memoranda of the trial judge, and (3) an evidentiary hearing to establish what evidence was presented at trial. *Hall*, 772 S.W.2d at 435. If the trial court conducts an evidentiary hearing that is transcribed, as it was here, then this Court can review the transcript of the proceeding, where it might find some support for revision of the evidentiary record. *Id.* Having reviewed the transcript of the post-trial proceeding in the present case, we do not find there to be any "exceptional circumstances" that would warrant revision of the evidentiary record approved by the trial court. This appears to be a typical situation where the trial judge and one of the parties differ in their recollection of evidence presented at trial. Under such circumstances, the determination of the trial court is conclusive and will not be disturbed.

We note that our holding on this matter disposes of the Kelleys' argument that they are entitled to damages. The question of the amount of damages to be allowed is an issue of fact, and the decision of the trial judge, sitting without a jury, enjoys a presumption of correctness on appeal unless the evidence preponderates otherwise. *Armstrong v. Hickman County Highway Dept.*, 743 S.W.2d 189, 195 (Tenn. Ct. App. 1987). As there is no evidence whatsoever in the record regarding the amount of damages, we cannot say that the trial court erred in its determination.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.  Costs of this appeal are taxed to the Appellants, Robert D. Kelley and Mitsy Kelley, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE