IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 12, 2017 Session

**WILLIAM M. PHILLIPS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Giles County**
**Nos. CR-12825, 16041     Robert L. Jones, Judge**

_____

**No. M2017-00118-CCA-R3-PC**

_____

The Petitioner, William M. Phillips, pled guilty in the Giles County Circuit Court to possession of one-half gram or more of cocaine with intent to sell and was sentenced as a Range II, multiple offender to twenty years in confinement. Subsequently, the Petitioner filed a pro se motion to withdraw his guilty plea, which the trial court denied, and a petition for post-conviction relief, which the post-conviction court denied. On appeal, the Petitioner contends that he is entitled to post-conviction relief because he was prejudiced by "a derogatory, racially based remark" made by the trial court during a hearing and because he was prejudiced by the trial court's denial of his pro se motion to withdraw his guilty plea without the appointment of counsel. Based upon the oral arguments, the record, and the parties' briefs, the denial of the petition for post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court. CAMILLE R. MCMULLEN, J., filed a concurring and dissenting opinion. TIMOTHY L. EASTER, J., filed a concurring opinion.

Douglas K. Chapman, Columbia, Tennessee, for the appellant, William M. Phillips.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Beverly White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In December 2012, the Giles County Grand Jury indicted the Petitioner in counts one, two, four, and five for selling one-half gram or more of cocaine, a Class B felony; in count three for selling less than one-half gram of cocaine, a Class C felony; in count six for possessing one-half gram or more of cocaine with intent to sell, a Class B felony; in count seven for possessing drug paraphernalia, a Class A misdemeanor; and in count eight for possessing a firearm during the commission of a dangerous felony, a Class D felony.  On August 20, 2013, the State filed a notice to seek enhanced punishment as a Range III, career offender.  On March 17, 2014, the State nolle prossed counts one, two, and four, and the trial court set a July 16, 2014 trial date for the remaining counts.

Initially, the trial court appointed counsel from the public defender's office to represent the Petitioner.  However, a conflict resulted in that office's withdrawal.  The court then appointed trial counsel (hereinafter "original trial counsel"), who filed multiple motions on the Petitioner's behalf before eventually filing a motion to withdraw from representation.  At the April 14, 2014 hearing on the motion, original trial counsel advised the trial court that he filed the motion to withdraw "[p]rimarily because my client is requesting my doing so" and "[s]econdarily, there is some issues that arose between my client and I and he believes that I'm not doing my job well enough for him[.]"  Original trial counsel also advised the court that the Petitioner had "gone so far as to provide copies of his grievances or his complaint to the Board of Professional Responsibility."  The trial court responded, "Well, he's awfully picky to be getting an appointed lawyer and then complaining about it."  Upon being questioned by the trial court, the Petitioner said he was serving a twenty-six-year sentence in a previous case and had been in confinement almost two years.  The Petitioner stated that his main complaints about original trial counsel were that counsel did not visit him enough and that he wanted to give "input[]" on motions filed by counsel.  He said that he had not yet filed a complaint with the Board of Professional Responsibility but that he was "planning on doing it."  The trial court relieved original trial counsel from the case.

After a recess, the trial court commented on appointing the Petitioner new counsel by saying, "I think it needs to be someone that has at least tried a B Felony case before, that would include [subsequent trial counsel]."  The trial court continued, "Well, let's try [subsequent trial counsel] and see if he's willing to take the case.  No one is going to want it after [the Petitioner] has already stirred up a fight with his other lawyer."  After subsequent trial counsel entered the courtroom, the trial court informed him about the case and said, "[The Petitioner's] got crossways with [original trial counsel] and I realize he's going to get crossways with his next lawyer too, those kind of people do routinely."  Almost immediately, the trial court stated as follows:

> Let me, since I used the "these people," I better clarify that for the record.  It is my experience that when we see a defendant who blames everybody but himself, he's probably going to blame all of these lawyers, not just the first one.  But

maybe [the Petitioner] is an exception and I shouldn't stereotype him with all those other cases like that I've had before.

Subsequent trial counsel agreed to represent the Petitioner.

On October 1, 2014, the day the Petitioner was supposed to go to trial, the Petitioner agreed to plead guilty to count five, selling one-half gram or more of cocaine, a Class B felony. As part of the plea agreement, the Petitioner was to serve a twenty-year sentence as a Range II, multiple offender and was to serve the sentence consecutively to his previous twenty-six-year sentence. In exchange for his guilty plea, the State dismissed the remaining counts.

Less than one month later, on October 30, the Petitioner filed a pro se motion to withdraw his guilty plea. In the motion, the Petitioner claimed that subsequent trial counsel coerced him into pleading guilty. He requested that he be allowed to withdraw his plea and that the trial court appoint new counsel to assist him with preparing for a trial on all the charges.

The trial court held a hearing on the motion to withdraw the guilty plea on November 13, 2014. At the hearing, the Petitioner and subsequent trial counsel testified. Although not included in the appellate record, the trial court referred to a motion to withdraw from representation filed by subsequent trial counsel on November 10, 2014. However, the trial court did not file an order granting subsequent trial counsel's motion to withdraw before the hearing. Additionally, the trial court did not follow Tennessee Rule of Criminal Procedure 44(b) for allowing the Petitioner to proceed pro se at the hearing.

During the hearing, subsequent trial counsel testified adversely to the Petitioner's claim that he should be allowed to withdraw his plea because subsequent trial counsel coerced him into pleading guilty. Near the conclusion of the hearing, the trial court said to the Petitioner, "I felt maybe that I should have appointed you a lawyer for today's hearing. But you know, we've gone about as far as we can in making sure you had the best representation possible." The trial court denied the Petitioner's motion to withdraw the plea, and the Petitioner did not appeal the denial to this court.

On August 3, 2015, the Petitioner filed a pro se petition for post-conviction relief, claiming, in pertinent part, that he was entitled to relief because the trial court failed to appoint counsel to represent him for his motion to withdraw his guilty plea; never notified him that he was "going to court" on the motion on November 13, 2014, and could present witnesses to testify on his behalf; and allowed subsequent trial counsel to testify against him at the hearing. The Petitioner also claimed that he received the ineffective assistance of counsel because subsequent trial counsel coerced him into

- 3 -

pleading guilty by using the Petitioner's mother as "bait to lure [the Petitioner] to the guilty-plea table." Finally, the Petitioner claimed that he was entitled to post-conviction relief because the trial court made an "inappropriate comment" to him at the April 14, 2014 hearing on original trial counsel's motion to withdraw. On September 11, 2015, the post-conviction court found that the petition stated a colorable claim and appointed counsel to represent the Petitioner. Post-conviction counsel did not file an amended petition for post-conviction relief.

At the November 23, 2016 evidentiary hearing, the Petitioner called subsequent trial counsel as his first witness. Subsequent trial counsel testified that on the morning of the scheduled trial, the parties had to wait about two hours for a court reporter, so counsel and the State began "renegotiating." The Petitioner agreed to plead guilty to selling cocaine, and the trial court held a guilty plea hearing. Counsel said that he "did not take part" in preparing the motion to withdraw the guilty plea and that "[i]t was filed by [the Petitioner]." Post-conviction counsel asked if subsequent trial counsel represented the Petitioner at the hearing on the motion to withdraw the plea, and subsequent trial counsel answered, "Well, it's kind of gray. . . . But I guess technically I was still -- could still be considered his -- his attorney but from a practical standpoint, and the merits of the case, I'd say that -- that my representation had terminated at that time." He acknowledged that he ended up testifying as a witness at the hearing on the motion to withdraw the plea and that he would have been unable to act as both a witness and the Petitioner's counsel. No other attorney represented the Petitioner at the hearing, and "[the Petitioner] voiced his concerns himself."

With regard to the Petitioner's mental health, subsequent trial counsel testified that a notation was placed in the "special conditions" box on the judgment form, stating that the trial court recommended that the Petitioner "be evaluated or subjected to, or admitted to the DeBerry Special Needs Facility in the Department of Corrections." Subsequent trial counsel thought the Petitioner's mother and sister requested the evaluation. He said that the Petitioner was "argumentative" and would not listen to counsel but that he never questioned the Petitioner's sanity. Counsel stated that the Petitioner had the ability to understand what was going on with the plea and that the Petitioner "knew and understood what was happening that day because it was the term of years and the percentage that he requested and when he got it, he accepted it."

Mary Ann White, the Petitioner's mother, testified that she and two of her daughters were present for the Petitioner's trial on October 1, 2014, and that she spoke with subsequent trial counsel. Counsel told her that he wanted the Petitioner to plead guilty because the Petitioner would "probably spend the rest of his life in prison" if the Petitioner went to trial. Counsel also told her the Petitioner was "out of control and acting crazy." The Petitioner, Ms. White, or Ms. White's daughter told counsel that Ms. White had been sick and had a heart problem, and counsel told Ms. White that he was going to let the Petitioner talk with her. Ms. White and her daughters waited in the

hallway outside the courtroom for "a long time," but counsel never brought the Petitioner out to speak with them. Counsel later told her that "they had settled the case." Ms. White said the Petitioner had "mental problems." After the Petitioner pled guilty, Ms. White talked with the trial court and asked that the court get the Petitioner some help for those problems before sending him back to prison. Later that day or the next day, Ms. White spoke with the Petitioner on the telephone, and he told her, "'I did what you wanted me to do. . . . I took the plea.'" Ms. White told the Petitioner, "'I didn't tell you to take that plea bargain.'" The Petitioner responded, "'Well, that ain't what he said.'" The Petitioner was upset and said that "they just lied to me." Ms. White said she did not tell subsequent trial counsel to convince the Petitioner to plead guilty.

Trudy Wood, the Petitioner's sister, testified that she was at the courthouse with her mother on October 1, 2014, and that subsequent trial counsel "came out to talk with us about the charges he had, and the agreements that they had been offered." Counsel also told them "something about videos." Ms. Wood and her mother told counsel that "whatever it was that [the Petitioner] chose to do, that would be fine with us, that we just wanted him to do what it was that he thought was best for him." They never told the Petitioner that he needed to plead guilty due to his mother's health. Ms. Wood said the Petitioner suffered from depression and mental illness.

In a written order, the post-conviction court denied the petition for post-conviction relief. In addressing whether the Petitioner was denied his right to counsel at the November 13, 2014 hearing on the motion to withdraw his guilty plea, the post-conviction court stated,

> The transcript of that November 13 hearing (Exhibit 12) shows that the Court discussed much of the case history with [the Petitioner] and asked him a number of questions including his reasons for wanting to withdraw his plea. [The Petitioner] explained in that hearing that [subsequent trial counsel] talked to his mother and sisters on October 1 before the guilty plea and told them things that caused them to communicate through [subsequent trial counsel] to [the Petitioner] that they supported him taking the plea agreement that had been reached. The Court also heard from [subsequent trial counsel] about those communications with family members and, at the end of the hearing, denied the request of [the Petitioner] to withdraw his plea. Those same issues are now alleged in the post-conviction proceeding as evidence of [subsequent trial counsel's] ineffective assistance of [the Petitioner] before the plea was entered.

In the event this Court should have appointed counsel and allowed [the Petitioner] to secure the attendance of witnesses for his motion to withdraw his plea, the Court is now giving him full consideration of that issue after hearing from his mother and one of his sisters at the November 23, 2016, hearing. . . . Therefore, any prejudice to the Petitioner for not having a lawyer on November 13, 2014, is being removed by fully considering those issues in this current proceeding.

The post-conviction court accredited subsequent trial counsel's testimony at the post-conviction evidentiary hearing that it was the Petitioner who wanted to reopen plea negotiations with the State and that it was the Petitioner who suggested a guilty plea to selling cocaine. The court stated that the transcript of the guilty plea hearing showed that the Petitioner "understood that he was facing a possible sentence of more than 30 years at 60%," that he knew the consequences of his plea, and that he was satisfied with subsequent trial counsel's representation. Thus, the court concluded that "there is no merit to his effort to withdraw his plea or to blame his trial counsel for his decision to settle" and that subsequent trial counsel did not coerce him into pleading guilty.

In addressing the Petitioner's claim that the trial court made a derogatory, racially-based remark during the April 14, 2014 hearing on original trial counsel's motion to withdraw, the post-conviction court stated that it "strongly believed" the Petitioner's race was not involved in the comment but that the comment was an "expression[] of frustration" with the Petitioner's inability to work with original trial counsel. Thus, the court concluded that the Petitioner was not entitled to post-conviction relief on that issue.

## II. Analysis

On appeal, the Petitioner argues that he was prejudiced by the trial court's racially prejudicial remark and that he was prejudiced by the trial court's denial of his motion to withdraw his guilty plea without appointing counsel or evaluating whether he had the mental capacity to proceed pro se. To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless

the evidence preponderates against those findings.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).  However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness.  Id. at 458.

## A.  Trial Court's Remark and Failure to Recuse

First, the Petitioner, who is African-American, contends that the trial court's comment about "those kind of people" was "a derogatory, racially based remark."  He further contends that the comment demonstrates that the trial court was prejudiced against him and that the trial court should have recused itself from his case.  The State argues that the issue has been waived.  We agree with the State.

"A motion for recusal should be filed when the facts forming the basis of that motion become known."  Bean v. Bailey, 280 S.W.3d 798, 803 (Tenn. 2009) (citing Davis v. Tenn. Dep't of Employment Sec., 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999)).  Furthermore, the Tennessee Supreme Court Rules require that any party seeking disqualification or recusal of a judge do so by filing a timely motion.  Tenn. Sup. Ct. R. 10B § 1.01.  Supreme Court Rule 10B is proactive in that it halts further proceedings in front of the judge whose recusal or disqualification is sought and provides exclusive options for an accelerated interlocutory appeal or a direct appeal after judgment is rendered if that motion for recusal or disqualification is denied.  Tenn. Sup. Ct. R. 10B §§ 1.02, 2.01.  A defendant's failure to file a motion to recuse in a timely manner may result in a waiver of his or her complaint about the judge's impartiality.  Bean, 280 S.W.3d at 803.  In terms of a petition for post-conviction relief, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]"  Tenn. Code Ann. § 40-30-106(g).

The Petitioner never filed a motion seeking disqualification or recusal of the trial court and did not raise the issue until he filed his petition for post-conviction relief.  Even then, he claimed only that the trial court had made an inappropriate comment and did not argue that the trial court should have recused itself.  The Petitioner could have filed a motion for recusal or disqualification after the trial court made the statement and before the entry of the Petitioner's guilty plea or the denial of his motion to withdraw his guilty plea.  He failed to do so.  Therefore, any claims regarding judicial bias and recusal are waived.

## B.  Right to Counsel

Next, the Petitioner contends that he was prejudiced by the trial court's failure to appoint counsel to represent him on the motion to withdraw his guilty plea or obtain a valid waiver of his right to counsel before allowing him to proceed pro se at the hearing.

The State argues that the Petitioner was not entitled to counsel because a motion to withdraw a plea is not a "critical stage" of the proceedings. The State also argues that, in any event, the issue of whether the Petitioner was coerced into pleading guilty was addressed at the post-conviction evidentiary hearing; therefore, the evidentiary hearing provided the Petitioner with an opportunity to have the issue addressed while represented by counsel. We conclude that the Petitioner is not entitled to relief.

The Petitioner filed his motion to withdraw his guilty plea on the basis that subsequent trial counsel coerced him into pleading guilty. He maintained in his post-conviction petition and at the post-conviction evidentiary hearing that subsequent trial counsel coerced him into pleading guilty. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the

defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences.  <u>Boykin</u>, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

<u>Blankenship v. State</u>, 858 S.W.2d 897, 904 (Tenn. 1993).

Turning to the instant case, the Petitioner contends that he was prejudiced by the trial court's failure to appoint counsel for his motion to withdraw his guilty plea or to evaluate his mentality at the hearing on the motion before allowing him to proceed pro se. However, the post-conviction court afforded the Petitioner a full and fair hearing on whether he entered his guilty plea knowingly and voluntarily.  He was represented by counsel at the hearing, called witnesses to testify on his behalf, and cross-examined the State's witness.  The post-conviction court found that the Petitioner's guilty pleas were knowing and voluntary and that subsequent trial counsel did not coerce him into pleading guilty.  In other words, the Petitioner failed to show that the trial court would have granted his motion to withdraw his guilty plea.  Accordingly, he has failed to demonstrate prejudice, and the post-conviction court properly denied his petition for post-conviction relief.

## III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
NORMA MCGEE OGLE, JUDGE