FILED
12/22/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 15, 2020 Session

**IN RE MARCH 9, 2012 ORDER**

**Appeal from the Circuit Court for Shelby County**
**No. CT-004568-15  Gina C. Higgins, Judge**

———————————————————

**No. W2019-01923-COA-R3-CV**

———————————————————

In a prior appeal, this Court affirmed dismissal of this case and remanded for the trial court to determine the appropriate amount of attorney's fees owed to the appellee due to the appellant's frivolous appeal.  On remand, the trial court ordered the appellant to pay the sum of $11,901.35.  The appellant then filed a motion to alter or amend, arguing, for the first time, that the trial court's order was "void *ab initio*" because it was "adjudicated by an adjudicator with compromised neutrality in violation of the Fourteenth Amendment[.]"  As support for this claim, the appellant pointed to comments made by the trial judge during hearings in a separate but related case in 2010 and 2012.  The appellant argued that the Fourteenth Amendment required the trial judge to disqualify herself *sua sponte* and that her failure to do so rendered all subsequent orders entered by the trial judge void.  The trial court treated this as a request for recusal "embedded" in the motion to alter or amend and denied the motion in all respects.  The appellant has appealed.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellant, William Goetz.

J. Lewis Wardlaw, Memphis, Tennessee, for the appellees, Dana Autin and Donel Autin.

**OPINION**

**I.      FACTS & PROCEDURAL HISTORY**

The parties to this litigation are former neighbors. They have been embroiled in litigation for a decade, and they have been before this Court many times. *See, e.g.*, *In re Mar. 9, 2012 Order*, No. W2016-02015-COA-R3-CV, 2017 WL 2304842 (Tenn. Ct. App. May 26, 2017); *Autin v. Goetz*, 524 S.W.3d 617 (Tenn. Ct. App. 2017); *Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818 (Tenn. Ct. App. Feb. 10, 2016) *perm. app. denied* (Tenn. June 24, 2016). We will not belabor this opinion with another detailed recitation of the facts because the issues presented on appeal are very limited.

In our most recent opinion, filed on May 26, 2017, this Court affirmed the trial court's dismissal of this case with prejudice. *In re Mar. 9, 2012 Order*, 2017 WL 2304842, at *5. We also concluded that the appellant's appeal was frivolous pursuant to Tennessee Code Annotated section 27-1-122 and awarded the appellees attorney's fees, directing the trial court to determine the amount of the award on remand. *Id.*

On June 17, 2019, the trial court entered an order awarding the appellees $11,901.35. On July 16, 2019, the appellant filed a 59-page motion to alter or amend, arguing, for the first time, and among other things, that the trial court's order awarding attorney's fees was void *ab initio* because it was "adjudicated by an adjudicator with compromised neutrality in violation of the Fourteenth Amendment[.]" The appellant insisted that "if a writing filed by a trial court . . . includes a deviation from Fourteenth Amendment due process, the writing is void *ab initio*[.]" He argued that the trial judge had violated his due process rights "by attempting to adjudicate with the appearance of compromised neutrality." Thus, the appellant argued that the trial judge "was then and is now disqualified from adjudicating the Subject Order."

The legal basis for the appellant's argument was *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016), in which the United States Supreme Court held that "under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." The Court explained that there was a risk that a judge in that position "'would be so psychologically wedded' to his or her previous position as a prosecutor that the judge 'would consciously or unconsciously avoid the appearance of having erred or changed position.'" *Id.* at 1906 (quoting *Withrow v. Larkin*, 95 S.Ct. 1456 (1975)). In the case before us, the appellant argued that *Williams* had "created new constitutional law" and that, as a result, "[v]ery little, qualitatively, is required to prove an appearance of a constitutionally impermissible compromise of neutrality[.]" He also argued that "the right to recusal is not dependent on a recusal motion from the litigant; rather, the recusal is the *sua sponte* obligation of the adjudicator."

As factual support for his claim of "the appearance of compromised neutrality," the appellant quoted statements purportedly made by the trial judge during hearings in 2010 and 2012 in the context of the Autin-Goetz litigation. For instance, the trial judge allegedly said that she was sealing the record because "there are still some very innocent children

- 2 -

out here that had nothing to do with what you grown folks got involved in, one way or the other." At another hearing, the trial judge allegedly stated, "There are children who are sitting at the heels of these folks in this neighborhood who potentially can have it spill over on them, and certainly their parents are involved in the details that may very well be made very public here. They can be embarrassed and harmed, and we know how cruel other children can be with children. So to the extent that I can ward off any hurt and harm, humiliations of the children I would like to[.]" Additionally, the trial judge expressed some concerns "safety-wise" for the children and whether they would somehow be "put in harm's way as a consequence of the conduct of these grown-ups." She cautioned the parties not to "speed down the street and endanger the lives of children and other people" or make sexually explicit comments around the children. According to the appellant, these remarks indicated that the trial judge "prefers the best interests of children, if necessary, at the expense of adults." Although there is nothing in the record to confirm this statement, the appellant claimed that the trial judge had "experience as a guardian ad litem for many children" when she was in private practice. The appellant acknowledged that the children referenced here, by the trial judge, were not parties to the litigation. Still, he insisted that the trial judge was so "psychologically wedded" to "the best interest of children" that the Fourteenth Amendment required her "to refrain from adjudicating the dispute in this case."

The appellees filed a response to the motion to alter or amend pointing out that the appellant had not filed any recusal motion, but yet, he argued that the trial judge was disqualified and that her orders were void. The appellees also argued that the motion to alter or amend simply sought to relitigate matters that had already been adjudicated and raise previously untried legal theories, and therefore, it was not a proper motion to alter or amend and did not toll the thirty-day time period for filing a notice of appeal.

On September 20, 2019, the trial court entered an order denying what the court characterized as the "embedded" recusal motion within the motion to alter or amend. At the outset, the trial judge noted that recusal was not specifically "requested or motioned" within the motion to alter or amend, that no Rule 10B motion for recusal was filed, and that all issues in the case had already been adjudicated with the exception of the Rule 59 motion. Nevertheless, the trial judge decided to address the matter. The order states that the suggestion of recusal was not well taken and was denied because the trial judge had "no perceived biases that would require the court to self-excuse because the court felt it could not be fair to any attorney or party before the court."

Thereafter, the trial court entered a separate order denying the motion to alter or amend to the extent that it raised additional arguments. The appellant timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

On appeal, the determinative issue raised by the appellant is:

1. "[W]as the trial court's adjudicator disqualified to adjudicate by the Fourteenth Amendment to the United States Constitution [] Due Process Clause guarantee that every litigant in the United States shall be adjudged by no person other than an adjudicator as to whom there is no appearance of undermined neutrality?"

The appellees raise the following additional issues, which we have slightly restated:

1. Whether this Court lacks jurisdiction because the appellant's appeal was untimely;
2. Whether the constitutionality of Tennessee Supreme Court Rule 10B is not properly before this Court.[1]

For the following reasons, we affirm the decision of the circuit court.

### III.    DISCUSSION

### *A.  Appellate Jurisdiction*

We begin with the appellees' issue regarding whether this Court lacks jurisdiction to consider this appeal.  The appellees argue that the appellant's "Rule 59.04 Motion to Alter or Amend" was not a proper motion to alter or amend because it essentially asked the court to reconsider its prior rulings, while at the same time presenting new and previously untried arguments, without seeking relief on an appropriate ground under Rule 59.  Thus, the appellees argue that the appellant's motion was improper and did not operate to toll the time period for filing an appeal to this Court.

"[A] motion to alter or amend pursuant to Tennessee Rule of Civil Procedure 59.04, if timely filed, toll[s] commencement of the thirty-day period [for filing a notice of appeal] until an order granting or denying the motion is entered." *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004) (citing Tenn. R. App. P. 4(b); *Binkley v. Medling*, 117 S.W.3d 252, 255 (Tenn. 2003)).  However, we "must consider the substance of a motion in determining whether it is in fact one of the specified post-trial motions which toll commencement of the time." *Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998).  At this point, the issue is not whether the trial court correctly *denied* the motion but instead whether the motion "was one recognized under Rule 59." *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 410 S.W.3d 820, 826 (Tenn. Ct. App. 2012).

"A motion to alter or amend should 'be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes

---

[1] We agree that the constitutionality of Rule 10B is not before this Court.  Although the appellant's brief suggested in a footnote that Rule 10B is unconstitutional, he also insisted that he sought no relief pursuant to Rule 10B, and he did not list any issue on appeal regarding the constitutionality of Rule 10B.

available; or to correct a clear error of law or to prevent injustice.'" *U.S. Bank*, 410 S.W.3d at 826 n.2 (quoting *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). Such a motion "'should not be used to raise or present new, previously untried or unasserted theories or legal arguments.'" *Id.* (quoting *In re M.L.D.*, 182 S.W.3d at 895). Additionally, a Rule 59.04 motion is not simply an opportunity "to re-litigate the issues previously adjudicated" by the trial court. *Burris v. Burris*, 512 S.W.3d 239, 247 (Tenn. Ct. App. 2016).

As previously noted, the appellant's post-judgment motion spanned fifty-nine pages and addressed a wide range of issues, including disqualification of the trial judge, the American Rule for paying attorney's fees, and in personam jurisdiction. In their response, the appellees argued that the motion was an improper motion to alter or amend that did not extend the time for appeal. However, the trial court treated the motion as a motion to alter or amend (albeit with an "embedded" recusal motion). The trial court entered one order addressing the recusal issue and a separate order addressing the remainder of the arguments in the motion to alter or amend.

We likewise conclude that the appellant's motion should be treated, at least in part, as a legitimate motion to alter or amend. Within his fifty-nine pages of argument, the appellant arguably "moved the trial court to address what [he] considered to be a clear error of law and/or injustice, thereby providing the trial court with an opportunity to correct any errors before its judgment became final and avoiding an unnecessary appeal." *Clear Water Partners, LLC v. Benson*, No. E2016-00442-COA-R3-CV, 2017 WL 376391, at *12-13 (Tenn. Ct. App. Jan. 26, 2017) (vacating an order striking a motion to alter or amend as an improper motion to reconsider); *see also In re Estate of Vaughn*, No. W2018-01600-COA-R3-CV, 2019 WL 3812419, at *6 n.5 (Tenn. Ct. App. Aug. 14, 2019) (recognizing that *some* of the relief requested in a post-judgment motion was "not amenable to consideration under a motion to alter or amend" but that the litigant also argued that "the trial court erred in its legal analysis," which was "qualitatively similar to a motion under Rule 59" requesting correction of a clear error of law); *Stokely v. Stokely*, No. E2017-00433-COA-R3-CV, 2018 WL 485998, at *3-4 (Tenn. Ct. App. Jan. 19, 2018) (recognizing that a motion to alter or amend or for new trial "largely ask[ed] the Trial Court to reconsider its decision" but concluding that it was not "so deficient as to not toll the period in which to file an appeal"); *Goetz*, 2016 WL 537818, at *6 (concluding that another post-judgment motion filed by the appellant in this case "impermissibly sought to present previously unasserted theories and legal arguments" but "arguably also requested that the trial court correct a clear error of law" such that it was properly deemed a motion to alter or amend). As such, the motion to alter or amend tolled the time period for filing a notice of appeal, and the appellant's notice of appeal was timely filed.

### B. *Williams v. Pennsylvania*

Next, we consider the appellant's argument regarding disqualification of the trial

judge. Notably, the appellant has based his argument on statements made by the trial judge nearly a decade ago in a separate case. The appellant has not filed a written motion for recusal in accordance with Tennessee Supreme Court Rule 10B. Instead, when the litigation between the parties finally appeared to be at its end, he filed a motion to alter or amend arguing that the trial court's final order and all previous orders were void. He argued that the trial judge had a "*sua sponte* obligation" to recuse herself regardless of the absence of any motion for recusal. The appellant maintains this argument on appeal, contending that this result is mandated by the United States Supreme Court's decision in *Williams v. Pennsylvania.*

Tennessee Supreme Court Rule 10B, section 1.01, states, "Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a written motion filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal." In *Cook v. State*, 606 S.W.3d 247, 254-55 (Tenn. 2020), the Tennessee Supreme Court set forth the following principles regarding recusal:

> If a litigant knows of facts indicating that a judge cannot fulfill the judicial obligations of fairness and impartiality, the litigant should request the judge's recusal by filing a written motion. See Tenn. Sup. Ct. R. 10B, § 1.01. Recusal motions should be filed when "the facts forming the basis of that motion become known." Bean v. Bailey, 280 S.W.3d 798, 803 (Tenn. 2009) (citing Davis v. Tenn. Dep't of Emp't Sec., 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999)). A litigant cannot manipulate the judicial process by knowing of allegedly improper judicial conduct but remaining silent until after the legal matter has been resolved unfavorably to the litigant. Id. (quoting Tenn. Dep't of Emp't Sec., 23 S.W.3d at 313). Therefore, a claim of judicial bias may be deemed waived if a litigant either fails to file a written recusal motion or fails to file a written recusal motion in a timely manner after learning the facts that form the basis of the request. Id. (citing Tenn. Dep't of Emp't Sec., 23 S.W.3d at 313).
>
> In some circumstances, however, judges have an obligation to recuse themselves even if litigants do not file recusal motions. Tenn. Sup. Ct. R. 10, R.J.C. 2.11, cmt. 2 ("A judge is obligated not to hear or decide matters in which disqualification is required, even though a motion to disqualify is not filed."). Rule of Judicial Conduct 2.11(A) enumerates six specific circumstances in which recusal is required, even if a motion for recusal is not filed. Tenn. Sup. Ct. R. 10, R.J.C. 2.11(A)(1)-(6). But the six listed circumstances are illustrative not exclusive, and "[a] judge *shall* disqualify himself or herself in *any* proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. Sup. Ct. R. 10, R.J.C. 2.11(A) (emphases added).
>
> Rule of Judicial Conduct 2.11 recognizes that "the appearance of bias

- 6 -

is as injurious to the integrity of the judicial system as actual bias." [Davis v.] Liberty Mut. Ins. Co., 38 S.W.3d [560, 565 (Tenn. 2001)] (citing Alley [v. State], 882 S.W.2d [810, 820 (Tenn. Crim. App. 1994))]. As a result, Rule of Judicial Conduct 2.11 incorporates the objective standard Tennessee judges have long used to evaluate recusal motions. In re Hooker, 340 S.W.3d 389, 395 (Tenn. 2011) (citing State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008); Liberty Mut. Ins. Co., 38 S.W.3d at 564-65). Under this objective test, recusal is required if "'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" Liberty Mut. Ins. Co., 38 S.W.3d at 564-65 (quoting Alley, 882 S.W.2d at 820). Rule of Judicial Conduct 2.11 and the objective standard it embraces reflect that

> our system of law has always endeavored to prevent even the probability of unfairness.... Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice."

In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (quoting Offutt [v. U.S.], 348 U.S. [11, 14, 75 S.Ct. 11 (1954))].

Id. at 254-55.

Throughout this case, the appellant has insisted that he "seeks no relief" pursuant to Rule 10B or any other aspect of Tennessee law. Instead, he wants the "singular issue" before this Court to be whether he is entitled to relief under the Due Process Clause of the Fourteenth Amendment as discussed in *Williams v. Pennsylvania*. Thus, we turn to examine that decision.

*Williams* involved a prisoner who was convicted of first-degree murder and sentenced to death. 136 S.Ct. at 1903. The Pennsylvania Supreme Court had vacated the decision of a postconviction court granting relief to the prisoner and reinstated his death sentence. *Id.* at 1903-1904. One of the justices on the Pennsylvania Supreme Court was the former district attorney who had given the prosecutor permission to seek the death penalty in the prisoner's case almost three decades earlier. *Id.* The justice denied the prisoner's motion for recusal and participated in the decision. *Id.* at 1903. The issue before the United States Supreme Court was "whether the justice's denial of the recusal motion and his subsequent judicial participation violated the Due Process Clause of the Fourteenth Amendment." *Id.* The Court's existing precedent set forth an objective standard requiring recusal "when the likelihood of bias on the part of the judge 'is too high to be constitutionally tolerable.'" *Id.* (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868,

- 7 -

872, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009)). Ultimately, the Court concluded that this standard was met and that due process compelled recusal of the justice. *Id.*

The Supreme Court framed its holding as follows: "under the Due Process Clause there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Id.* at 1905. The Court explained,

> Due process guarantees "an absence of actual bias" on the part of a judge. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Bias is easy to attribute to others and difficult to discern in oneself. To establish an enforceable and workable framework, the Court's precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present. The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, "the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton*, 556 U.S., at 881, 129 S.Ct. 2252. Of particular relevance to the instant case, the Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case. See *Murchison*, 349 U.S., at 136-137, 75 S.Ct. 623. This objective risk of bias is reflected in the due process maxim that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *Id.*, at 136, 75 S.Ct. 623.

*Id.* at 1905-1906. According to the Court, this due process guarantee "would have little substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision." *Id.* at 1906. In that situation, the Court found "a risk that the judge 'would be so psychologically wedded' to his or her previous position as a prosecutor that the judge 'would consciously or unconsciously avoid the appearance of having erred or changed position.'" *Id.* (quoting *Withrow*, 421 U.S., at 57, 95 S.Ct. 1456). Even decades later, there was still a serious risk that the judge "would be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process." *Id.* at 1907. Thus, the justice's "significant, personal involvement in a critical decision in [the] case gave rise to an unacceptable risk of actual bias." *Id.* at 1908. This risk of actual bias "so endangered the appearance of neutrality" that due process required his recusal. *Id.* at 1908-1909.

In closing, the Supreme Court emphasized that "due process demarks only the outer boundaries of judicial disqualifications" and that statutes and professional codes of conduct "provide more protection than due process requires." *Id.* at 1908 (internal quotations omitted). "Most questions of recusal are addressed by more stringent and detailed ethical rules, which in many jurisdictions already require disqualification under the circumstances

- 8 -

of this case." *Id.* Notably, the Court added, "[t]he fact that most jurisdictions have these rules in place suggests that today's decision will not occasion a significant change in recusal practice." *Id.*

On appeal, the appellant argues that *Williams* was a "game-changer on judicial neutrality." He reiterates that he "stands on [his] Fourteenth Amendment, Due Process Clause right to have an adjudicator who is free of an appearance of undermined neutrality as articulated by *Williams*[.]" Relying on the trial judge's statements from 2010 and 2012 about children, the appellant insists that the trial judge was "psychologically wedded" to the "protection of minor children over the rights of the adults." Thus, the appellant argues that the trial judge was "disqualified to adjudicate" in this case and should have recused herself *sua sponte*. The appellant acknowledges that the children referenced by the trial judge "were not parties by any definition," that this was not a domestic relations or family law case of any kind, and that the children had no interest in the subject matter of this proceeding. He states,

> Respectfully, the issue in the instant case has nothing to do with any hint that the trial court adjudicator may have been biased (non-neutral) in the sense of favoritism toward one litigant in comparison to another litigant. There is none of that in this, in actuality or in appearance. Rather, [the] trial court adjudicator was openly biased in favor of non-parties (children), and the trial court adjudicator unabashedly stated that the interests [of] both litigants would be subordinated to the interests of the minor children, as seen through the eye[s] of the trial court adjudicator.

The appellant interprets *Williams* to mean that "the evidence needed to prove a disqualifying 'appearance' is minimal and includes all sorts of information including highly circumstantial evidence that may not even be admissible in an adversarial context." According to the appellant, "*Williams* makes it next to impossible, if not impossible, for an adjudicator who is 'psychologically wedded' to something connected to a case to avoid an unconstitutional appearance of undermined neutrality." He contends that "[v]ery little, qualitatively, is required to prove an appearance of a constitutionally impermissible compromise of neutrality[.]" In sum, the appellant asks this Court to "reverse all orders in this case . . . because the trial court adjudicator adjudicated encumbered by the appearance of an admitted predisposition, to which she was admittedly 'psychologically wedded,' and which she admittedly allowed to control her adjudications in this case."

*Williams* has not been interpreted or applied as broadly as the appellant suggests. A brief review of some cases from the federal circuits is instructive. For instance, in *United States v. Williams*, 949 F.3d 1056, 1061 (7th Cir. 2020), the United States Court of Appeals for the Seventh Circuit explained that the due process analysis for recusal requires courts to determine whether "'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" (quoting *Rippo v. Baker*, 137

S.Ct. 905, 907 (2017)).  However, the Seventh Circuit added,

> Courts have identified a limited set of circumstances that meet this standard.  First, actual bias is disqualifying.  *See, e.g., Franklin* [*v. McCaughtry*, 398 F.3d 955, 961-62 (7th Cir. 2005)] (finding actual bias where there was evidence that the judge determined that defendant was guilty before trial).  Second, "there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case."  *Williams v. Pennsylvania*, ─── U.S. ───, 136 S. Ct. 1899, 1905, 195 L.Ed.2d 132 (2016).  Third, a judge is disqualified when the judge has a financial incentive in the case's outcome.  *See, e.g.*, *Rippo*, 137 S.Ct. at 906; *Caperton*, 556 U.S. at 877-78, 129 S.Ct. 2252; *Bracy* [*v. Gramley*], 520 U.S. [899,] 906, 909, 117 S.Ct. 1793 [(1997)]; *Bracy v. Schomig*, 286 F.3d 406, 413, 419 (7th Cir. 2002) (en banc).  Lastly, a judge should recuse himself when the judge becomes "personally embroiled" with a litigant. *Mayberry v. Pennsylvania*, 400 U.S. 455, 465-66, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); *see also Del Vecchio* [*v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1373-75 (7th Cir. 1994)].
>
> This case does not fit into these buckets.  Williams has not provided any evidence of actual bias. . . . Nor is there any evidence that Judge Bruce had a pecuniary interest in the outcome, previously worked on the case as a prosecutor, or became "personally embroiled" with the parties.

*Id.*

Similarly, in *Johnson v. Morales*, 946 F.3d 911, 918 n.3 (6th Cir. 2020), the Sixth Circuit observed that the Supreme Court's recusal precedents have "declined to find an unconstitutional risk of bias in all but a few narrow circumstances—none of which apply here."  The Sixth Circuit explained:

> Before its decision in *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009), the [Supreme] Court had only required recusal in two types of situations.  The first was "when the judge ha[d] a financial interest in the outcome of the case," and the second was "when the judge [was] trying a defendant for certain criminal contempts." *Id.* at 890, 129 S.Ct. 2252 (Roberts, C.J., dissenting).
>
> In *Caperton*, the Court held that there is an unconstitutional risk of bias "when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent." *Id.* at 884, 129 S.Ct. 2252.  The narrowness of its holding reflected the Court's perception that it was dealing with an "extreme case" that presented "an extraordinary situation" with facts it considered

"extreme by any measure." *Id.* at 887, 129 S.Ct. 2252. This, the Court explained, was characteristic of its recusal cases, each of which "dealt with extreme facts that created an unconstitutional probability of bias that 'cannot be defined with precision.'" *Id.* (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986)).

The Court next revisited its recusal jurisprudence in *Williams*. There, once again, the Court framed its holding narrowly: "[W]here a judge has had an earlier significant, personal involvement as a prosecutor in a critical decision in the defendant's case, the risk of actual bias in the judicial proceeding rises to an unconstitutional level." *Williams*, 136 S. Ct. at 1910. The situation here bears no resemblance to either *Caperton* or *Williams*.

*Id.*

Finally, we note a similar discussion by the Fourth Circuit in *United States v. Richardson*, 796 F.App'x 795, 799-800 (4th Cir. 2019), *cert. denied,* 140 S.Ct. 2656 (2020), *and cert. denied sub nom. Chadwick v. United States*, 140 S.Ct. 2750 (2020).

Because "most matters relating to judicial disqualification [do] not rise to a constitutional level," *Caperton*, 556 U.S. at 876, 129 S.Ct. 2252 (alteration in original) (quoting *FTC v. Cement Inst.*, 333 U.S. 683, 702, 68 S.Ct. 793, 92 L.Ed. 1010 (1948)), it is the "extraordinary situation where the Constitution requires recusal," *id.* at 887, 129 S.Ct. 2252. These situations may be largely categorized as instances when an extraordinary financial interest exists between a judge and a litigant, *see, e.g.*, *Caperton*, 556 U.S. at 884, 129 S.Ct. 2252 (requiring recusal of elected state court judge in case involving corporation whose CEO had contributed about $3 million to judge's election campaign following lower court's entry of $50 million judgment against corporation when it was likely that corporation would seek review in state supreme court), when a judge acts as a significant part of the accusatory process before presiding over the accused's trial, *see, e.g.*, *Williams*, 136 S. Ct. at 1903 (requiring recusal of judge before whom defendant appeared seeking relief from a death sentence where the judge had, as district attorney, given approval to seek death penalty against defendant); *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (requiring recusal of judge when judge acts as a "one-man grand jury" by hearing testimony qua grand jury, presiding over contempt hearing of grand jury witnesses qua judge, and holding grand jury witnesses in contempt for their conduct before judge qua grand jury), or when a judge is involved in a running, bitter controversy with a litigant, *see, e.g.*, *Mayberry v. Pennsylvania*, 400 U.S. 455, 465, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) (requiring recusal of judge in a litigant's contempt trial when that litigant continuously, "cruelly slandered" the judge).

Simply put, an extraordinary situation is not before us. . . .

*Id.*

Like these federal circuit courts, we conclude that the facts of the case before us are a far cry from those present in *Williams*. The appellant claims that the trial judge in this civil matter appeared to have a predisposition in favor of the best interest of children, in general, over adults. The appellant admits that the trial judge had no bias "in actuality or in appearance" that would advantage either party in this case, and this was not one of those extraordinary situations in which the likelihood of bias was too high to be constitutionally tolerable. The facts of this case simply do not rise to the level of a due process violation. The Due Process Clause of the Fourteenth Amendment did not require the trial judge to disqualify herself *sua sponte*, and the orders entered by the trial judge are not void. All other issues are pretermitted.[2]

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court denying the appellant's post-judgment motion and the award of attorney fees. Costs of this appeal are taxed to the appellant, William Goetz, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[2] We note that the appellees asked this Court to award them attorney's fees for the filing of a frivolous appeal. However, they requested that this Court make such an award *sua sponte* and failed to list this as an issue presented for review. We therefore decline to award attorney's fees on appeal. *See Brunetz v. Brunetz*, 573 S.W.3d 173, 186 (Tenn. Ct. App. 2018) (concluding that requests for attorney's fees on appeal were waived where they were argued in the briefs but not designated as an issue).